## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**ANTHONY McCOY,**

Plaintiff,

v.                                                               Civil Action No. **3:10CV756**

**OFFICER CHAPPELL,** *et al.,*

Defendants.

### MEMORANDUM OPINION

Plaintiff Anthony McCoy, a Virginia prisoner proceeding *pro se* and *in forma pauperis,*

brings this action pursuant to 42 U.S.C. § 1983. McCoy contends that, while incarcerated at the

Nottoway Correctional Center ("NCC"), Defendants[1] used excessive force against him in

violation of the Eighth Amendment.[2] Defendants move for summary judgment on the ground

that McCoy failed to exhaust his administrative remedies. McCoy has responded. The matter is

ripe for disposition. Because McCoy did not exhaust his administrative remedies, his claim will

be DISMISSED.

### I. Summary of Relevant Allegations

On September 29, 2010, McCoy "was laying down on [his] bed" when Defendants

ordered him to come to the door of his cell to be handcuffed. (Compl. 5.)[3] McCoy refused,

stating, "'I don't understand why you people still have to mess with me, I sit in the hole I want to

---

[1] McCoy names the following as defendants: Officer Chappell, Sergeant Anderson, Captain Hurst, Lieutenant Walton, and Lieutenant Stokes (collectively "Defendants"). At all times relevant to this action, Defendants were employees of NCC.

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[3] Where appropriate, the Court has corrected capitalization and punctuation in quotations to McCoy's submissions.

be left alone for christsake.'" (*Id.*) Defendants informed McCoy that they would restrain him if he did not obey orders. McCoy replied, "'I can't stop you.'" (*Id.*) McCoy remained lying down with his hands inside his jumpsuit as Defendants entered his cell. Defendants "accused [McCoy] of being passive resistant." (*Id.*) McCoy, still keeping his arms inside his jumpsuit, responded by turning on his belly.

Defendants then "got on top of" McCoy and demanded that he submit to restraints. McCoy "repeatedly [told Defendants] to leave [him] alone, that [McCoy] haven't done anything to warrant them rushing [him] while [he] was laying on [his] bed." (*Id.* (spelling corrected).) Defendants then shocked McCoy seven times with a "shock shield," tore his jumpsuit and shirt, carried him out into the pod area and slammed him on the floor. (*Id.*) McCoy claims that this left him with a twisted ankle. McCoy further states, "They had absolutely no reason to come in my cell and assault me. These people are cruel to me." (*Id.*) McCoy asserts that, by these actions, Defendants violated his Eighth Amendment right to be free from cruel and unusual punishments.

## II. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation

marks omitted).  When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* former Fed. R. Civ. P. 56(c) and 56(e) (1986)).  Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994) (*quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n. 7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only cited materials, but it may consider other materials in the record.").

Defendants ask the Court to dismiss McCoy's claim because McCoy failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).  Because the exhaustion of administrative remedies is an affirmative defense, Defendants bear the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007).  In support of their contention, Defendants submit the affidavit of A. James, the Grievance Coordinator at NCC (Mem. Supp. Mot. Summ. J. Ex. I ("James Aff.")), and copies of grievances submitted by McCoy (James Aff. Enclosures A, B, C).

In his affidavit, James discusses Virginia Department of Corrections ("VDOC") Operating Procedure § 866.1 ("Operating Procedure § 866.1") at length.  Defendants have failed, however, to produce a copy of Operating Procedure § 866.1 in support of their motion for summary judgment.  Rather, Defendants rely on James's affidavit to convey the substance of Operating Procedure § 866.1 to the Court.  McCoy has not objected to the admissibility of James's statements concerning Operating Procedure § 866.1. *See* Fed. R. Civ. P. 56(c)(2),

3

56(e)(2).  The Court will take judicial notice of Operating Procedure § 866.1.[4]  Operating

Procedure § 866.1, *available at* http://www.vadoc.state.va.us/about/procedures/documents/

800/866-1.pdf (last visited Dec. 27, 2011).  The Court admonishes Defendants that, in the first

instance, they should provide all necessary documents for the resolution of their motion for

summary judgment, especially given the regularity with which agency protocol changes.

McCoy submits only his unsworn complaint (Docket No. 1) and copies of various

medical records (Docket No. 20).  McCoy's unsworn complaint is not admissible evidence and,

thus, will not be considered.  Fed. R. Civ. P. 56(c)(4).  The Court notes that the medical records

submitted by McCoy shed absolutely no light on the issue of whether McCoy properly exhausted

his claim prior to filing the instant action.  In light of the foregoing principles and submissions,

the facts set forth below are established for purposes of the Motion for Summary Judgment.

### III. Summary of Pertinent Facts

**A.    VDOC's Grievance Procedure**

Operating Procedure § 866.1, Inmate Grievance Procedure, is the mechanism used to

resolve inmate complaints at NCC.  (James Aff. ¶ 4.)  Operating Procedure § 866.1 requires that,

before submitting a formal grievance, the inmate must demonstrate that he or she has made a

good faith effort to resolve the grievance informally through the procedures available at the

institution to secure institutional services or resolve complaints.  (Operating Procedure

§ 866.1.V.A.)  Generally, a good faith effort requires the inmate to file an informal complaint

form.  (*Id.* § 866.1.V.A.1.)  If the informal resolution effort fails, the inmate must initiate a

regular grievance by filling out a standard form.  (*Id.* § 866.1.VI.A.2.)

---

[4] *Perry v. Johnson*, No. 3:10CV630, 2011 WL 3359519, at *3 (E.D. Va. Aug. 3, 2011) (taking judicial notice of VDOC operating procedure); *Bowler v. Ray*, No. 7:07CV 00565, 2007 WL 4268915, at *1 (W.D. Va. Nov. 30, 2007) (same); Fed. R. Evid. 201(b)(2) (permitting judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

"The original *Regular Grievance* (no photocopies or carbon copies) should be submitted by the offender through the facility mail system to the Facility Unit Head's Office for processing by the Institutional Ombudsman/Grievance Coordinator." (*Id.* § 866.1.VI.A.2.b.) The offender must attach to the regular grievance a copy of the informal complaint. (*Id.* § 866.1.VI.A.2.a.) Additionally, "[i]f 15 calendar days have expired from the date the *Informal Complaint* was logged without the offender receiving a response, the offender may submit a *Grievance* on the issue and attach the *Informal Complaint* receipt as documentation of the attempt to resolve the issue informally." (*Id.* § 866.1.V.A.2.) A formal grievance must be filed within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control. (*Id.* § 866.1.VI.A.1.)

### 1. Grievance Intake Procedure

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. (*Id.* § 866.1.VI.B.) A grievance meeting the criteria for acceptance is logged in on the day it is received, and a "*Grievance Receipt*" is issued to the inmate within two days. (*Id.* § 866.1.VI.B.2.) If the grievance does not meet the criteria for acceptance, prison officials complete the "*Intake*" section of the grievance and return the grievance to the inmate within two working days. (*Id.* § 866.1.VI.B.3.) If the inmate desires a review of the intake decision, he or she must send the grievance form to the Regional Ombudsman within five calendar days of receipt. (*Id.* § 866.1.VI.B.4.)

### 2. Grievance Appeals

Up to three levels of review for a regular grievance exist. (*Id.* § 866.1.VI.C.) The Facility Unit Head of the facility in which the offender is confined is responsible for Level I

5

review. (*Id.* § 866.1.V.C.1.) If the offender is dissatisfied with the determination at Level I, he may appeal the decision to Level II, a review which is conducted by the Regional Director, the Health Services Director, or the Chief of Operations for Offender Management Services. (*Id.* § 866.1.VI.C.2.) The Level II response informs the offender whether he or she may pursue an appeal to Level III. (*Id.* § 866.1.VI.C.2.f.)

### B.    McCoy's Grievances

#### 1.    McCoy's First Regular Grievance

On September 30, 2010, McCoy submitted a Regular Grievance form requesting "criminal complaint forms so I can press charges against [Defendants] that assaulted me on 9-29-10." (James Aff. Enclosure A ("First Regular Grievance") 1.) McCoy did not request that prison officials take any direct action. (*Id.*) Ms. Chaffin, an alternate Grievance Coordinator (James Aff. ¶ 9), responded to the First Regular Grievance on October 1, 2010 by completing the "**INTAKE**" section of the grievance. (First Regular Grievance 2; *see* Operating Procedure § 866.1.VI.B.) Ms. Chaffin checked the box next to the pre-printed phrase: "Request for services." (*Id.*) Next to that pre-printed phrase, Ms. Chaffin handwrote, "Write to: Nottoway Sherriff's Office: P.O. Box 6: Nottoway, VA 23955." (*Id.*) Additionally, Ms. Chaffin noted that McCoy never used the informal process to resolve his complaint. (*Id.*) NCC staff returned the First Regular Grievance to McCoy. (James Aff. ¶ 9.) Nothing before the Court indicates that McCoy sought a review of this intake decision from the Regional Ombudsman. (*See* Operating Procedure § 866.1.VI.B.4.)

#### 2.    McCoy's Second Regular Grievance

On November 5, 2010, McCoy submitted another Regular Grievance requesting "to press assault charges on [Defendants] and the other State employees that came in my cell and assaulted

me on September 29, 2010." (James Aff. Enclosure B ("Second Regular Grievance") 1.) This request was coupled with a request to press charges on another NCC staff member for "slamming [McCoy's] arm in [his] tray slot on November 3, 2010." (*Id.*)

Officer Ortiz, an alternate Grievance Coordinator (James Aff. ¶ 10), responded to the Second Regular Grievance on November 8, 2010 by completing the "**INTAKE**" section of the grievance. (Second Regular Grievance 2.) Officer Ortiz checked the box next to the pre-printed phrase: "Informal Procedure. You have not used the informal process to resolve your complaint." (*Id.*) The Second Standard Grievance "did not meet the intake criteria" and was returned to McCoy. (James Aff. ¶ 10.) James avers that, because inmates are not allowed to grieve more than one issue per grievance form, the Second Standard Grievance was also improper for grieving more than one issue. (*Id.*) Nothing before the Court indicates that McCoy sought a review of this intake decision from the Regional Ombudsman. (*See* Operating Procedure § 866.1.VI.B.4.)

### 3.     McCoy's Third Regular Grievance

On November 8, 2010, McCoy submitted a third Regular Grievance form stating: "I still want to press assault charges on [Defendants] and the other prison guards that came into my cell on September 29, 2010, and I still want to press charges on [Officer] Stokes for slamming my arm in my tray slot on November 3, 2010." (James Aff. Enclosure C ("Third Regular Grievance") 1.) Ms. Chaffin responded to the Third Regular Grievance on November 9, 2010 by completing the "**INTAKE**" section of the grievance. (*Id.* at 2.) Ms. Chaffin checked the box next to the pre-printed phrase, "Request for services." (*Id.*) Next to this pre-printed phrase, Ms. Chaffin handwrote, "Send Lt. Rodriguez a request form." (*Id.*) In his affidavit, James avers that,

> Since [the Third Regular Grievance] did not meet the intake criteria, Ms. Chaffin did not accept the grievance and did not assign[ ] a log number to it. The

grievance was returned to McCoy. . . . Again, I note that [the Third Regular Grievance] contains two issues. This would be another reason why it would not have been accepted.

(James Aff. ¶ 11.) Nothing before the Court indicates that McCoy sought a review of this intake decision from the Regional Ombudsman. (*See* Operating Procedure § 866.1.VI.B.4.)

### III. Exhaustion Analysis

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Additionally, the Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "'so that the agency addresses the issues on the merits.'" *Id.* (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Because McCoy failed to seek a review from the Regional Ombudsman of the intake decisions with respect to any of his three regular grievances, he failed to exhaust his administrative remedies. *Oliver v. Va. Dep't Corr.*, No. 3:09–cv–00056, 2010 WL

1417833, at *5 (W.D. Va. Apr. 6, 2010); *see Bishop v. Taylor*, No. 7:08–cv–0228, 2008 WL

1733236 at *2 (W.D. Va. Apr. 10, 2008); *Woodford*, 548 U.S. at 90.

"[D]ismissal with prejudice may be appropriate 'where exhaustion was required but

administrative remedies have become unavailable after the prisoner had ample opportunity to use

them and no special circumstances justified failure to exhaust.'" *McCoy v. Williams*,

No. 3:10CV349, 2011 WL 5153253, at *4 (E.D. Va. Oct. 28, 2011) (*quoting Berry v. Kerik*, 366

F.3d 85, 88 (2d Cir. 2004)). McCoy's claim falls within this criteria. Accordingly, McCoy's

claim will be DISMISSED WITH PREJUDICE.

## IV. Conclusion

McCoy's claim will be DISMISSED WITH PREJUDICE. Defendants' Motion for

Summary Judgment (Docket No. 17) will be GRANTED. The action will be DISMISSED.

An appropriate Order shall issue.

Date: 2-10-12
Richmond, Virginia

/s/
James R. Spencer
United States District Judge